UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JOHN HARRINGTON,**

  Plaintiff,

  and

**MIDWEST OPERATING ENGINEERS WELFARE FUND,**

  Involuntary Plaintiff,

  v.   Case No. 21-CV-1182-SCD

**MADELINE SIMMS,
AARON NORDENTOFT,** and
**CHAOS FARMS, LLC,**

  Defendants.

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

John Harrington was seriously injured while helping his friend, Aaron Nordentoft, ignite fireworks during a small Fourth of July gathering at the property where Nordentoft lived with his girlfriend, Madeleine Simms.[1] Harrington sued Nordentoft, Ms. Simms, and the owner of the property (Chaos Farms, LLC) for negligence and strict liability. All three defendants have moved for summary judgment on the strict liability claim, and Ms. Simms and Chaos Farms have moved for summary judgment on the negligence claims asserted against them. Because the defendants were not carrying on an abnormally dangerous activity at the time Harrington was injured, and because Harrington willingly participated in that

---

[1] Ms. Simms' first name is spelled Madeleine, not Madeline.

activity, he may not pursue a strict liability claim against any of the defendants. Moreover, because Harrington's negligence exceeds any negligence on the part of Ms. Simms or Chaos Farms as a matter of law, he may not pursue his negligence claims against them. I will therefore grant the defendants' motions.

## BACKGROUND[2]

The facts are essentially undisputed. In 2020, Aaron Nordentoft wanted to celebrate the Fourth of July the way many Americans do—by lighting off fireworks with his family and friends. Defs.' Facts ¶ 5. He purchased commercial-grade, shell-type fireworks from a co-worker and asked John Simms, the father of his girlfriend, Madeleine Simms, if he could light them off at the Simms' property in Lake Geneva. Defs.' Facts ¶¶ 2, 6, 8; Pl.'s Facts ¶¶ 33, 35, 51–58. At the time, Ms. Simms was renting the property from her father, who owned it through his limited liability company, Chaos Farms, LLC. Defs.' Facts ¶¶ 1–3; Pl.'s Facts ¶¶ 19–21. Ms. Simms lived at the property with Nordentoft. Defs.' Facts ¶ 4. The property is located in a rural area of Lake Geneva and is primarily surrounded by farms:

---

[2] I take these facts from Ms. Simms and Chaos Farms' Statement of Undisputed Facts ("Defs.' Facts"), ECF No. 35, and Harrington's Statement of Additional Facts ("Pl.'s Facts"), ECF No. 39. The parties did not respond to the other side's proposed facts, as required by this district's local rules. *See* E.D. Wis. Civ. L. R. 56.



Defs.' Facts ¶ 21. Mr. Simms allowed Nordentoft to light off fireworks at the property without knowing what kind of fireworks Nordentoft had purchased or how Nordentoft planned to set them off. Defs.' Facts ¶¶ 6–7; Pl.'s Facts ¶¶ 28, 37–39.

With Mr. Simms' blessing, Nordentoft invited several friends to the property on the evening of July 4, 2020. Pl.'s Facts ¶¶ 54–55. Although Nordentoft had lit off fireworks at the property before, he did not have any experience with commercial-grade fireworks or any certificates in pyrotechnics. Pl.'s Facts ¶¶ 27–32. Nordentoft also did not have a permit to light off the fireworks, did not read the safety instructions on the label of the fireworks, and did not watch any videos on how to safely light off the fireworks he purchased. Pl.'s Facts ¶¶ 36–38, 43–45. Nordentoft created an apparatus to light the fireworks off using five-gallon buckets, PVC pipes, and sand. Pl.'s Facts ¶¶ 44, 47–48.

John Harrington was one of three friends—aside from Nordentoft and Ms. Simms—who attended the gathering at the Simms' property on the Fourth of July. Defs.' Facts ¶ 10; Pl.'s Facts ¶ 57; Deposition of Aaron Nordentoft, ECF No. 41-1 at 41:13–44:12; Deposition of John Harrington, ECF No. 41-2 at 15:2–12. Prior to Harrington's arrival, Nordentoft had lit off five or six shells without incident. Pl.'s Facts ¶¶ 65–66. Shortly after Harrington arrived,

3

Nordentoft asked him to help with the fireworks. *See* Harrington Dep. at 12:14–16:7, 46:16–20. Harrington followed Nordentoft to his work truck to get a torch. Defs.' Facts ¶ 13; Pl.'s Facts ¶ 73. The two then walked to Nordentoft's personal truck, where Nordentoft grabbed a shell and handed it to Harrington. Harrington Dep. at 46:21–48:11.

Nordentoft and Harrington then walked to where the buckets had been set up. Defs.' Facts ¶ 14. Ms. Simms used her cell phone to illuminate the area, but she did not walk with them to the buckets. Harrington Dep. at 48:12–49:16. Nordentoft estimated the buckets were about fifty to sixty feet from where everyone else was congregating, Nordentoft Dep. at 48:9–15; Harrington thought they were about twenty feet away, Harrington Dep. at 23:15–25:10. Nordentoft told Harrington to remove the wick from the packaging and place the shell in the homemade mortar with the wick hanging out the top. Defs.' Facts ¶¶ 15–18; Pl.'s Facts ¶¶ 74–76. Harrington did as instructed, backed away about five or six feet, and told Nordentoft he was ready. As soon as Nordentoft touched the torch to the wick, the firework exploded. Defs.' Facts ¶ 19; Pl.'s Facts ¶ 77. It hit Harrington in his face, and he ultimately had his right eye removed and replaced with a prothesis. Pl.'s Facts ¶ 80; *see also* Plaintiff's Brief in Opposition, ECF No. 40 at 1.

In October 2021, Harrington filed a tort action in federal court against Ms. Simms, Nordentoft, and Chaos Farms. *See* Complaint, ECF No. 1. Harrington later filed an amended complaint adding his health plan as an involuntary plaintiff. *See* First Amended Complaint, ECF No. 28. On September 9, 2022, Ms. Simms and Chaos Farms filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Defendants' Motion for Summary Judgment, ECF No. 32. The following month, Nordentoft filed a motion for partial summary judgment under Rule 56. *See* Defendant's Motion for Partial

Summary Judgment, ECF No. 38. The motions are fully briefed and ready for resolution. *See* Defendants' Amended Brief in Support, ECF No. 42; Plaintiff's Brief in Opposition, ECF No. 40; Defendants' Reply Brief, ECF No. 44. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 8, 18, 20.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party

5

does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

Harrington asserts four claims for relief in the amended complaint: negligence against Chaos Farms, negligence against Nordentoft, negligence against Ms. Simms, and strict liability against all three defendants. Ms. Simms and Chaos Farms seek summary judgment on the strict liability claim and the negligence claims asserted against them. Nordentoft has joined and adopted their arguments with respect to the strict liability claim

### I. The Defendants Are Entitled to Summary Judgment on Harrington's Strict Liability Claim

Harrington alleges that all three defendants are strictly liable for the harm he suffered because they engaged in ultrahazardous, or abnormally dangerous, acts or omissions. The defendants contend that the strict liability claim must be dismissed because a fireworks display is not an ultrahazardous activity, as that term is defined by Wisconsin law. Alternatively, the defendants maintain that the Wisconsin courts would not allow Harrington to recover under his strict liability theory because he knowingly participated in the activity that harmed him.[3]

#### A. The defendants did not carry on an "abnormally dangerous activity"

---

[3] Wisconsin courts use the terms "ultrahazardous," "extrahazardous," and "abnormally dangerous" synonymously. *See, e.g.*, *Brandenburg v. Briarwood Forestry Servs., LLC*, 2014 WI 37, ¶¶ 13, 18–20, 48, 847 N.W.2d 395, 424, 438–39.

6

The parties agree that Wisconsin law governs this diversity action. *See* Defs.' Br. at 5 n.22 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); Pl.'s Br. at 6–9, 11–12 (applying Wisconsin law). Wisconsin courts rely on sections 519 and 520 of the Restatement (Second) of Torts (1977) to determine whether someone is strictly liable for carrying on an abnormally dangerous activity. *See Fortier v. Flambeau Plastics Co.*, 476 N.W.2d 593, 604 (Wis. Ct. App. 1991) (citing *Bennett v. Larsen Co.*, 348 N.W.2d 540, 553 (Wis. 1984); *Brown v. L.S. Lunder Constr. Co.*, 2 N.W.2d 859, 861 (1942)). Subsection (1) of section 519 provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Subsection (2) clarifies that "[t]his strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

Section 520 of the Restatement lists six factors courts use to determine whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Grube v. Daun*, 570 N.W.2d 851, 856–57 (Wis. 1997) (quoting Restatement (Second) of Torts § 520). "These factors are interrelated and should be considered as a whole, with weight being apportioned by the court in accordance with the facts in evidence." *Grube*, 570 N.W.2d at 857 (citing Restatement (Second) of Torts, § 520 cmt. l). "[W]here the facts are undisputed, whether an activity is abnormally dangerous 'is to be determined by the court, upon

consideration of all the factors listed in sec. 520, and the weight given to each that it merits upon the facts in evidence.'" *Grube*, 570 N.W.2d at 856 (quoting *Fortier*, 476 N.W.2d at 605).[4]

Because Wisconsin courts have not decided whether lighting off fireworks constitutes an abnormally dangerous activity, I must predict how the Wisconsin Supreme Court would rule if this case were before it now. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635–37 (7th Cir. 2002). The parties have not cited—and I have not found—any case in which a Wisconsin court has determined that an activity *was* an abnormally dangerous one as a matter of law. In *Wagner v. Continental Casualty Co.*, the Wisconsin Supreme Court listed transporting nuclear waste and working with toxic gases as examples of abnormally dangerous activities. 421 N.W.2d 835, 840 (Wis. 1988). Wisconsin caselaw also includes several examples of activities that *are not* abnormally dangerous: pesticide spraying, *Bennett*, 348 N.W.2d at 553; demolishing a dilapidated roof, *Wagner*, 421 N.W.2d at 836, 844; the installation and use of an underground storage tank on a farm, *Grube*, 570 N.W.2d at 857; machining an asbestos-containing friction disk, *Tatera v. FMC Corp.*, 2010 WI 90, ¶ 36, 786 N.W.2d 810, 825; working with high voltage electricity, *Estate of Thompson v. Jump River Elec. Coop.*, 593 N.W.2d 901, 905–06 (Wis. Ct. App. 1999); and using a landfill to store toxic chemicals, *Fortier*, 476 N.W.2d at 604–08.

Jurisdictions outside Wisconsin "disagree on whether discharging fireworks is an abnormally dangerous activity." *Toms v. Calvary Assembly of God, Inc.*, 132 A.3d 866, 874 (Md. 2016). For example, courts in Washington and Arizona have found that public fireworks displays are abnormally dangerous. *See Klein v. Pyrodyne Corp.*, 810 P.2d 917, 919–22 (Wash.

---

[4] Although Harrington insists that the abnormally dangerous activity issue is a question of fact for the jury to decide, his brief does not identify any facts regarding his strict liability claim that are genuinely disputed.

1991); *Miller v. Westcor Ltd. P'ship*, 831 P.2d 386, 390–93 (Ariz. Ct. App. 1991). Courts in Pennsylvania, California, and Illinois have reached the opposite conclusion, however. *See Haddon v. Lotito*, 161 A.2d 160, 162 (Pa. 1960); *Litzmann v. Humboldt Cty.*, 273 P.2d 82, 87–88 (Cal. Dist. Ct. App. 1954); *Cadena v. Chi. Fireworks Mfg. Co.*, 697 N.E.2d 802, 812–15 (Ill. App. Ct. 1998). And several lower courts in Connecticut have denied motions to strike strict liability claims concerning unlawful fireworks displays, finding discharging fireworks without a required permit to be abnormally dangerous. *See Holt v. Adams*, No. HHDCV166070761S, 2017 WL 1430615, 2017 Conn. Super. LEXIS 618, at *6–13 (Apr. 4, 2017); *Colangelo v. Bay View Improvement Ass'n*, No. CV136018781S, 2013 WL 6171399, 2013 Conn. Super. LEXIS 2496, at *5–14 (Nov. 4, 2013); *Lipka v. Dilungo*, No. 407399, 2000 WL 295355, 2000 Conn. Super. LEXIS 639, at *3–14 (Mar. 8, 2000).

Those cases help demonstrate that some of the section 520 Restatement factors weigh in favor of holding the defendants strictly liable for the harm Harrington suffered when the firework exploded in his face on July 4, 2020. Given the possibility of a firework malfunctioning or being misdirected, there's a high degree of risk that discharging a commercial-grade firework will cause some harm to the person, land, or chattels of others. This danger is further evidenced by Wisconsin's statutory scheme regulating fireworks, which required a permit to possess or use the fireworks Nordentoft lit off and imposed criminal penalties for noncompliance. *See* Wis. Stat. § 167.10. Likewise, the defendants concede that fireworks displays can result in ear ringing, minor burns, and serious injuries, Defs.' Br. at 10, and in this case the resulting harm was great—Harrington eventually lost his right eye as a result of the firework explosion. On the other hand, setting off fireworks on the Fourth of July is a time-honored tradition that is almost always performed without injury to anyone.

9

The parties also agree that setting off fireworks is not a matter of common usage, despite what many of us witness throughout the summer and especially on the Fourth of July. Furthermore, although the Simms' family property is in a rural area surrounded primarily by farms, Nordentoft testified at his deposition that the other spectators were only fifty or sixty feet from where the buckets were set up. Nordentoft therefore could have chosen a more appropriate place on the property to light off the fireworks. Finally, because this was a private fireworks display attended by only six people, the value to the community was low and outweighed by its dangerous attributes.

Nevertheless, the remaining factor—the ability to eliminate the risk by the exercise of reasonable care—strongly weighs against strict liability under the circumstances present here. Harrington argues that the defendants are strictly liable because they knew the risks involved with lighting off commercial-grade fireworks but didn't take the steps necessary to eliminate those risks. He points out that Nordentoft didn't obtain a permit, wasn't experienced or certified in pyrotechnics, didn't read the instructions on the package, and created a homemade apparatus to launch the fireworks. An activity does not become abnormally dangerous, however, when it is negligently carried out. Rather, "an activity that is said to be . . . abnormally dangerous . . . is one in which the risk of harm remains unreasonably high *no matter how carefully it is undertaken*. *Wagner*, 421 N.W.2d at 840 (emphasis added). The issue therefore is whether the risk of injury could have been minimized with reasonable care. *See Thompson*, 593 N.W.2d at 905 (holding that "the risk of injury need not be eliminated, just minimized").

The ability to take steps to minimize the risk of harm appears to be the most important factor in determining whether an activity is abnormally dangerous under Wisconsin law. For

example, in *Bennett*, the Wisconsin Supreme Court held that pesticide spraying is not an abnormally dangerous activity—despite the defendants in that case failing to comply with the instructions on the label—because the risk of harm to bees "can be reduced through the exercise of reasonable care in spraying." *Bennett*, 348 N.W.2d at 553 (listing precautionary measures like monitoring the weather conditions, using an experienced applicator, and carefully following the label directions). Similarly, in *Thompson*, the Wisconsin Court of Appeals held that "working with high voltage electricity . . . is not an abnormally dangerous activity because special precautions may be taken to minimize the risk of injury." *Thompson*, 593 N.W.2d at 905 (noting that the accident would have been prevented if the decedent had worn rubber gloves, used mechanized equipment to remove the utility pole, or covered the pole before removing it).

Harrington's own allegations show that the defendants in our case could have taken special precautions to minimize the risk of harm to others. Most significantly, they could have obtained a permit to light off the fireworks. They also could have carefully followed the label instructions and made sure that spectators were farther away when Nordentoft lit the fuse. Given these available precautionary measures, I believe the Wisconsin Supreme Court would find that the defendants were not carrying on an abnormally dangerous activity when the firework exploded in Harrington's face on July 4, 2020.

### B. Harrington willingly participated in the activity that harmed him

Even if the defendants did carry on an abnormally dangerous activity, Harrington cannot pursue a strict liability claim against them because he knowingly participated in the activity that harmed him. Subsection (a) of section 523 of the Restatement of Torts (1938) expressly stated that the strict liability rule for abnormally dangerous activities "does not apply

11

where the person harmed by the unpreventable miscarriage of an ultrahazardous activity has reason to know of the risk which makes the activity ultrahazardous and . . . takes part in it." "This common law bar to recovery later fell under the rubric of assumption of risk." *Rodgers v. Erickson Air-Crane Co.*, 740 A.2d 508, 512 n.5 (Del. Super. Ct. 1999) (citing Restatement (Second) of Torts § 523 (1977)); *see also Stout v. Johnson*, 244 P.3d 1039, 1042 n.8 (Wash. Ct. App. 2011) (noting that the Restatement (Second) "subsumes the assumption of risk concept contained in" the first Restatement). According to section 523 of the Restatement (Second), "[t]he plaintiff's assumption of the risk of harm from an abnormally dangerous activity bars his recovery for the harm." Comment d to section 523 indicates that this risk "is commonly assumed by one who takes part in the activity himself, as a servant, an independent contractor, a member of a group carrying on a joint enterprise or as the employer of an independent contractor hired to carry on the activity."

Because Wisconsin courts have not decided whether a person who takes part in an abnormally dangerous activity may pursue a strict liability claim against those who carry on the activity, I must predict how the Wisconsin Supreme Court would rule if this case were before it now. The parties have not cited—and I have not found—any case in which a Wisconsin court has applied assumption of risk to an abnormally dangerous activity. Nevertheless, other states have held that participants in abnormally dangerous activities are barred from bringing a strict liability cause of action against other participants. *See* Defs.' Br. at 7 n.29 (citing cases from Utah, Arizona, and North Carolina); *see also G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 569 (S.D. Ill. 1994); *Stout*, 244 P.3d at 1042–44; *Pinson v. 45 Dev., LLC*, No. 2:12-CV-02160, 2013 WL 5348478, 2013 U.S. Dist. LEXIS 135707, at *16–17 (W.D. Ark. Sept. 23, 2013); *Holt*, 2017 Conn. Super. LEXIS 618, at *13–15. Likewise, in a

12

case with facts materially indistinguishable from those here, the Kansas Supreme Court found that strict liability did not apply because the plaintiff participated in lighting the firework that injured him. *Pullen v. West*, 92 P.3d 584, 589–90, 592–93 (Kan. 2004).

The undisputed facts in our case establish that Harrington had reason to know that the fireworks were dangerous and that Harrington willingly participated in lighting the fireworks. Harrington agreed to help Nordentoft with the fireworks, followed Nordentoft to his work truck to get the torch, and went with Nordentoft to his personal truck to get the firework. Harrington also accepted the shell from Nordentoft, removed the wick from the packaging, and placed the shell in the launch tube. And, after backing away several feet, Harrington gave Nordentoft the okay to light the fuse.

Harrington's attempt to avoid the implications of his own conduct is unavailing. He first argues that he did not take part in the activity that injured him because he did not provide the fireworks, encourage others to light off fireworks, or light the fuse. Although those facts may be true, they are not necessary to demonstrate that he participated. Moreover, according to Harrington, he didn't know the fireworks were commercial grade, he didn't know that a permit was required to possess them, and he had not seen any fireworks lit off before the one exploded in his eye. Harrington, however, held the shell in his hand while he walked from Nordentoft's truck to where the buckets were set up, with the area illuminated by a cell phone. Harrington also testified at his deposition that the shell was "about the size of a baseball, maybe a little bit bigger." Harrington Dep. at 17:7–8. Thus, he should have known that the firework was more dangerous than a sparkler or bottle rocket. Harrington also contends that Nordentoft and Ms. Simms were in a better position to assess the dangerousness of the

13

fireworks being lit off. Even if true, however, that fact does not alter Harrington's knowledge about the risks involved and active participation in the activity.

According to Harrington, there's also an issue of fact as to his level of participation. Harrington said in his deposition that he walked five or six feet away from the homemade mortar before telling Nordentoft he was ready. Nordentoft, however, said that Harrington held the wick in his hand as Nordentoft lit it. *See* Nordentoft Dep. at 61:23–63:1. That factual dispute is not material, as no reasonable jury could find that Harrington did not take part in lighting off the firework that injured him, even accepting his own, more restricted version of events. Harrington does not dispute helping Nordentoft with the fireworks, including by going with him to get the torch, carrying the firework to the buckets, removing the firework's wick from the packaging, and placing the firework in the launch tube.

Finally, Harrington maintains that *Pullen* is factually distinguishable from our case. The plaintiff in *Pullen* helped light off fireworks for ninety minutes before he was injured. In contrast, Harrington had just arrived at the property, and he was injured by the first firework he helped light off. The court in *Pullen*, however, did not rely on the length of the plaintiff's involvement to find that he engaged in the activity that harmed him. Thus, the fact that Harrington arrived minutes before he was injured does not alter his participation in helping Nordentoft light off the fireworks.

\*   \*   \*

In sum, Harrington's strict liability claim must be dismissed as to each defendant. The defendants did not carry on an abnormally dangerous activity and, even if they had, Harrington cannot benefit from the strict liability doctrine because he willingly participated

14

in that activity. Therefore, Harrington's ability to recover from the defendants rests solely with his negligence claims, which provide an adequate (potential) remedy for his injury.

## II. Ms. Simms and Chaos Farms Are Entitled to Summary Judgment on Harrington's Negligence Claims

Ms. Simms and Chaos Farms also contend that Harrington's negligence claims must be dismissed because he was more negligent than they were as a matter of law. Wisconsin is a comparative negligence state. *See* Wis. Stat. § 895.045. Subsection (1) of section 895.045 provides that "[c]ontributory negligence does not bar recovery in an action by any person . . . to recover damages for negligence resulting . . . in injury to person . . . , if that negligence was not greater than the negligence of the person against whom recovery is sought." The statute further provides that "[t]he negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent." *Id.* "Generally, the apportionment of negligence is for the jury." *Skybrock v. Concrete Constr. Co.*, 167 N.W.2d 209, 214 (Wis. 1969) (citing *Lawver v. Park Falls*, 151 N.W.2d 68, 70 (Wis. 1967)). "Where, however, it appears that the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold." *Skybrock*, 167 N.W.2d at 214 (citations omitted).

Wisconsin courts have denied recovery to plaintiffs who intentionally and unjustifiably exposed themselves to a known risk. *See Brunette v. Emp'rs Mut. Liab. Ins. Co.*, 320 N.W.2d 43, 45 (Wis. Ct. App. 1982) (listing cases). For example, in *McKnight v. Sheboygan Jaycees*, the Wisconsin Court of Appeals affirmed a directed verdict in favor of the defendants in a case where the plaintiff was injured while igniting fireworks during a concert sponsored by the Sheboygan Jaycees. No. 80-077, 1980 WL 99385, 1980 Wisc. App. LEXIS 4029, at *1–3 (Oct. 27, 1980). The court determined that, although the seller of the firework was negligent *per se*

15

(because the purchaser did not display the permit required by state law), "his negligence was less than the contributory negligence of [the plaintiff]." *Id.* at *7–10. The court noted that the plaintiff "volunteered to assist in setting off the fireworks" despite having "no experience with explosives." *Id.* at 10. According to the court, the plaintiff, as a reasonable person, "should have realized the potential for injury." *Id.* In contrast, the seller merely "sold a relatively small amount of fireworks . . . to a representative of the [the band]." *Id.* The court held that, "[w]hile some harm is foreseeable from sale to an unlicensed purchaser, it is relatively remote when compared to the active negligence of the plaintiff in this case." *Id.*

The undisputed facts of our case establish that Harrington was more negligent than Ms. Simms and Chaos Farms as a matter of law. Ms. Simms' involvement in the fireworks display was minimal. She allowed Nordentoft, her live-in boyfriend, to light off fireworks on the property she rented from her father. She knew Nordentoft didn't have a permit, she was present while Nordentoft lit off several fireworks, and she used her cell phone as a flashlight to help illuminate the setup area. Chaos Farms' involvement was even more limited. Through its agent, Mr. Simms, Chaos Farms allowed the fireworks display at its property without knowing the type of fireworks Nordentoft had purchased or how Nordentoft planned to light them off. In contrast, Harrington willingly and actively participated in lighting off the firework that injured him. He went with Nordentoft to get the torch, accepted the firework from Nordentoft, removed the wick from the packaging, and placed the firework in the launch tube. As the person who handled the firework, Harrington knew, or should have known, that his actions involved a substantial risk of injury not only to Nordentoft and the other guests, but also to himself.

16

Harrington insists that the negligence claims against Ms. Simms and Chaos Farms should be submitted to a jury. He first argues that those defendants were negligent *per se* because they violated Wisconsin's fireworks statute. That statute prohibits individuals from possessing or using fireworks without a permit. Wis. Stat. § 167.10(3)(a). However, there is no evidence that Ms. Simms or Chaos Farms ever possessed or used a firework. Because it is not clear beyond a reasonable doubt that those defendants violated the fireworks statute, they were not negligent *per se*. *See Bennett*, 348 N.W.2d at 548–49 ("[S]tatutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory.") (citation and quotation marks omitted). On the other hand, the undisputed facts show that Harrington at least possessed the firework and arguably used it, too. Thus, he was negligent *per se*.

Harrington also argues that there's an issue of fact regarding the parties' comparative negligence. However, the only disputed fact he mentions is whether he backed away before Nordentoft lit the firework or whether he held the wick in his hand while Nordentoft lit it. As explained above, that dispute is not material—no reasonable jury could find Ms. Simms or Chaos Farms more negligent than Harrington, even under his version of events. Because Harrington was more negligent than Ms. Simms and Chaos Farms as a matter of law, Wisconsin law precludes his negligence claims against those defendants.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the motion for summary judgment filed by Madeline Simms and Chaos Farms, LLC, ECF No. 32, and the motion for partial summary judgment filed by Aaron Nordentoft, ECF No. 38. What remains is a negligence

17

claim against Nordentoft. The clerk will schedule the matter for a telephonic scheduling conference.

**SO ORDERED** this 15th day of June, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge